1

**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)

2 SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)

3 TODD KENNEDY (State Bar No. 250267)
100 Pine Street, Suite 1250

4 San Francisco, CA 94111
Telephone: (415) 271-6469

5 Facsimile: (415) 449-6469

6 *Attorneys for Plaintiffs*

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 | NICOLE LOCKHART, BOBBI | C.A. No.: _____
O'SULLIVAN, and ALEXIS JADE |

12 | HUNTER, on behalf of themselves, the | **CLASS ACTION COMPLAINT**
general public, and those similarly situated, |

13 | | **JURY TRIAL DEMANDED**

14 | Plaintiffs, |

15 |         v. |

16 | BEVERAGE MARKETING USA, INC., |
HORNELL BREWING CO., INC, |

17 | ARIZONA BEVERAGE COMPANY |
LLC, ARIZONA BEVERAGES USA |

18 | LLC, and ARIZONA ICED TEA LLC, |

19 |         Defendants. |

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.    Plaintiffs Nicole Lockhart, Bobbi O'Sullivan, and Alexis Jade Hunter, by and through their counsel, bring this class action against Beverage Marketing USA, Inc., Hornell Brewing Co., Inc., AriZona Beverage Company LLC, AriZona Beverages USA LLC, and AriZona Iced Tea LLC (collectively, "Defendants") on behalf of themselves, the general public, and those similarly situated for violations of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; common law fraud, deceit and/or misrepresentation; and unjust enrichment/restitution. The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise

2.    Defendants are among the world's largest producers of canned and bottled beverages. Defendants' beverages are sold throughout the United States and California in convenience stores and supermarkets such as Walmart, Kroger, Safeway, Costco, and Target.

3.    Defendants' flagship product is "Green Tea with Ginseng and Honey" (the "Product") Defendants claim on their website that the Product is "America's best-selling green tea."

4.    To sell the Product, Defendants represent to consumers that it contains ginseng in an amount sufficient to provide energy to those who drink it. For example, on the 23-ounce can and gallon jug containers of the Product, they represent that the drink contains "Ginseng for energy." In addition, the Product title on the front of the containers has only six words, with "ginseng" appearing in capital letters: "Green Tea With GINSENG and HONEY."

5.    Consumers are familiar with the well-publicized benefits of consuming ginseng. Ginseng is believed to be a cure for low energy, and is purported to have other health benefits.

6.    Defendants themselves credit the presence of ginseng for the success of the Product. On the primary webpage that Defendants designed for the Product, Defendants ask the

question "Ever wonder how it became so popular?" They answer it by saying that the Product contain "100% natural green tea," as well as "just the right amount of ginseng," as well as premium honey.[1]

7.      The Product, however, does not contain any detectible amounts of ginseng, if indeed it contains any ginseng at all. Accordingly, Defendants' representations that (i) the Product has enough ginseng to provide energy; and (ii) the Product has "just the right amount of ginseng," are demonstrably false.

8.      Defendants apparently decided to use, at best, a miniscule, scientifically undetectable amount of ginseng in the Product (or, more likely, to entirely omit ginseng from the Product), to increase their revenues. Over the past decade, demand for ginseng has skyrocketed while supply has dwindled, causing prices to surge above $1,000 per pound. Ginseng is so coveted in the marketplace that certain species of ginseng have been harvested to the edge of extinction. Defendants know that if they were to use enough ginseng in the Product to actually provide energy to consumers, their revenues (and competitive advantage) would suffer.

9.      Defendants never disclosed to consumers that the Product does not contain enough ginseng to provide energy. Defendants' misrepresentations and omissions have misled millions of consumers and caused them to pay a premium for the Product.

## PARTIES

10.      Nicole Lockhart is, and at all times alleged in this Class Action Complaint was, an individual and resident of Huntington Beach, California.

11.      Bobbi O'Sullivan is, and at all times alleged in this Class Action Complaint was, an individual and resident of Petaluma, California.

12.      Alexis Jade Hunter is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Hawthorne, California.

13.      Defendant Beverage Marketing USA, Inc. is a corporation existing under the laws

---

[1] *See* https://www.drinkarizona.com/product/green-tea-with-ginseng-honey (last accessed March 28, 2019).

of the State of the New York, having its principal place of business at 60 Crossways Park Drive, Suite 400, Woodbury, NY 11797.

14.     Defendant Hornell Brewing Co., Inc. is a corporation existing under the laws of the State of the New York, having its principal place of business at 60 Crossways Park Drive, Suite 400, Woodbury, NY 11797.

15.     Defendant AriZona Beverages USA LLC is a company existing under the laws of the State of New York, having its principal place of business at 60 Crossways Park Drive, Suite 400, Woodbury, NY 11797.

16.     Defendant AriZona Beverage Company LLC is a company existing under the laws of the State of New York, having its principal place of business at 60 Crossways Park Drive, Suite 400, Woodbury, NY 11797.

17.     Defendant AriZona Iced Tea LLC is a company existing under the laws of the State of New York, having its principal place of business at 700 Columbia Street, Brooklyn, NY 11231.

18.     At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such, and with the permission and consent of each Defendant.

19.     At all times herein mentioned, each of the Defendants was a member of, and engaged in, a joint venture, partnership and common enterprise, and acted within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

20.     At all times herein mentioned, the acts and omissions of each of the Defendants concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

21.     At all times herein mentioned, each of the Defendants ratified each and every act or omission complained of herein.

22.     At all times herein mentioned, each of the Defendants aided and abetted the acts

and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

### JURISDICTION AND VENUE

23.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this action is a class action in which at least one member of the class is a citizen of a State different from the defendants.

24.     The injuries, damages and/or harm upon which this action is based occurred or arose out of activities engaged by Defendants within, affecting, and emanating from California. Defendants intentionally advertised the Product in California, representing that it contained "Ginseng for energy," causing a significant portion of reasonable consumers to believe that the Product contained enough ginseng to provide them with energy. Defendants distributed the Product in California knowing it would be sold at retail to consumers such as Plaintiffs. Plaintiffs purchased the Product in California based on Defendants' misrepresentations.

25.     Each Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in California.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of California, including within this District.

27.     In accordance with California Civil Code Section 1780(d), Plaintiffs concurrently file herewith declarations establishing that, in 2008, they purchased the Product in California. (*See* Exhibits A, B and C.)

### SUBSTANTIVE ALLEGATIONS

28.     The non-alcoholic beverages market is fiercely competitive. Beverage producers continually attempt to gain market share in various ways, including by touting the ingredients in their products and the positive ways that those ingredients will affect the consumer.

29.    Operating under the brand name "AriZona," Defendants are large companies that produce, market, and distribute non-alcoholic beverages for sale to consumers.

30.    Defendants understand that consumers are increasingly health-conscious and interested in consuming beverages that are healthy. At the same time, with the recent explosion of the energy drink market, Defendants also understand that consumers are increasingly interested in consuming beverages that provide energy, including by natural means.

31.    By deciding to advertise the Product—their flagship beverage—as containing ginseng, Defendants have been able to capitalize on both of these market trends. Defendants effectively represent to consumers that they can consume a healthy beverage, while at the same time gaining energy from the ginseng, a natural product. Defendants know, however, that their representations are false; the Product does not contain enough ginseng to provide energy to consumers, if indeed it contains any ginseng at all.

**A.  Defendants' Misrepresentations**

32.    Defendants repeatedly represent to consumers on the Product itself that it contains ginseng. The front of the label for the gallon jug of the Product states as follows:



1

2    33.    Likewise, the front of the label for the 23-ounce can appears as follows:

3

4

5    

6

7

8

9

10    34.    As can be seen in the two photographs above, the title of the product is "Green Tea

With GINSENG and HONEY," clearly representing to consumers that the product contains

11    ginseng.

12    35.    Defendants also repeatedly represent to consumers that the amount of ginseng in

13    the Product is enough to provide energy to those who drink it. The back of the label for the gallon

14    jug of the Product appears as follows:

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36.     Similarly, the back of the label for the 23-ounce can of the Product appears as follows:



37.     As can be seen in the two photographs above, the containers for the Product prominently state that the Product contains "Ginseng for energy."

38.     The representation that the Product contains "Ginseng for energy" was uniformly communicated to Plaintiffs and every other person who purchased the Product during the proposed class period

39.     Defendants' website also represents to consumers that the Product contains a substantial amount of ginseng. On the primary webpage that Defendants designed for the Product, Defendants ask the question "Ever wonder how it became so popular?" They answer it by saying that the Product contains "100% natural green tea," as well as "just the right amount of ginseng," as well as premium honey.

40.     The Product, however, does not contain any detectible amounts of ginseng, if indeed it contains any ginseng at all.

41.     Plaintiffs' counsel retained two respected food laboratories to conduct three tests of the Product for ginsenosides—the main chemical constituent of ginseng. Although various samples of the Product were tested using incredibly sensitive equipment,[2] none of the three tests

---

[2] A ginsenoside would have been detected if it equaled or exceeded 0.624 mcg/g—equivalent to 0.624 parts per million.

were able to detect *any* amount of ginsenosides in the Product. Thus, the testing confirmed that the Product contains either no ginseng at all, or, at best, an amount of ginseng that is so miniscule that it cannot be detected even by scientific tests and could not provide energy to a consumer.

42.     The laboratories also tested several competing products made by other beverage producers. Like the Product, those competing products were advertised as containing ginseng. The labs confirmed that products made by competing brands, such as Republic of Tea and Starbucks, do contain ginseng.

43.     Defendants' representations misled reasonable consumers into believing that the Product contains sufficient ginseng to provide energy to those who consume it.

**B.     Consumer Demand for Ginseng**

44.     For thousands of years, ginseng has been used in Chinese medicine to treat numerous ailments. Ginseng is believed to boost both physical and mental energy.[3] In one study, for example, ginseng was shown to have antifatigue effects in patients with idiopathic chronic fatigue.[4] It is believed that main chemical constituents of ginseng, ginsenosides, is responsible for ginseng's positive effects.[5]

45.     The ginseng plant is slow-growing and takes years to mature. In recent years, the demand for ginseng among has skyrocketed while supply has dwindled, causing prices to surge above $1,000 per pound.[6] The plant is so coveted that certain species of ginseng have been harvested to the edge of extinction.[7]

46.     Defendants decided to use a miniscule, scientifically undetectable amount of ginseng in the Product (or to entirely omit ginseng from the Product), to increase their revenues.

---

[3] *See, e.g.,* https://www.medicalnewstoday.com/articles/262982.php (last accessed March 29, 2019)
[4] *See* Kim HG et al., Antifatigue effects of Panax ginsing C.A. Meyer: a randomized, double-blind, placebo-controlled trial, PLoS One (April 17, 2013).
[5] *See, e.g.,* https://www.medicalnewstoday.com/articles/262982.php; Kim HG et al.
[6] *See, e.g.,* https://www.nationalgeographic.com.au/people/as-demand-for-ginseng-soars-poachers-threaten-its-survival.aspx (last accessed March 29, 2019).
[7] *See id.*

Defendants knew that if they were to use enough ginseng in the Product to actually provide energy to consumers, their revenues would suffer.

47.     Defendants' advertising and labeling of the Product as containing "Ginseng for energy" is false, misleading, and intended to induce consumers to purchase the Product, at a premium price, while ultimately failing to meet consumer expectations.

48.     Defendants engaged in the practices complained of herein to further their private interests of: (i) increasing sales of the Product, while decreasing the sales of competing beverages; and/or (ii) commanding a higher price for the Product because consumers will pay more for beverages containing ginseng in sufficient quantities to provide energy.

**C.     Plaintiffs' Experiences**

49.     Plaintiff Lockhart has purchased the Product many times within California over the past three years. For example, she purchased the gallon jug in July 2018 at Ralph's grocery store in Fountain Valley, California. She has purchased both the gallon jug and the 23-ounce can of the Product. Before purchasing the Product, she read and relied on Defendants' representation that the Product contains "Ginseng for energy." Ms. Lockhart believed this meant that the Product contained ginseng and that consuming it would provide the energy associated with ginseng consumption. At the time of each purchase, Ms. Lockhart did not know that the Product did not contain an amount of ginseng capable of providing any energy, if it contained any at all.

50.     As a result of Defendants' misrepresentations and omissions, the Product has no, or, at, a minimum, a much lower, value to Ms. Lockhart. Had Ms. Lockhart known that the product does not contain enough ginseng to provide energy (or that the product does not contain any ginseng at all), she would not have purchased it or, at a minimum, would have paid less for it. Accordingly, Ms. Lockhart was injured by paying more money for the Product than she would have paid were it not for Defendants' misrepresentations.

51.     Plaintiff O'Sullivan purchased the Product within California within the past three years. For example, she purchased the gallon jug of the Product in July 2018 at Safeway near her home in Petaluma, California. Before purchasing the product, she read and relied on Defendants'

representation that the Product contains "Ginseng for energy." Ms. O'Sullivan believed this meant that the Product contained ginseng and that consuming it would provide the energy associated with ginseng consumption. At the time of each purchase, Ms. O'Sullivan did not know that the Product did not contain an amount of ginseng capable of providing any energy, if it contained any at all.

52.    As a result of Defendants' misrepresentations and omissions, the Product has no, or, at, a minimum, a much lower, value to Ms. O'Sullivan. Had Ms. O'Sullivan known that the product does not contain enough ginseng to provide energy (or that the product does not contain any ginseng at all), she would not have purchased it or, at a minimum, would have paid less for it. Accordingly, Ms. O'Sullivan was injured by paying more money for the Product than she would have paid were it not for Defendants' misrepresentations.

53.    Plaintiff Hunter purchased the Product within California within the past three years. For example, she purchased the gallon jug of the Product in July 2018 at Ralph's grocery store in Hawthorne, California. Before purchasing the product, she read and relied on Defendants' representation that the Product contains "Ginseng for energy." Ms. Hunter believed this meant that the Product contained ginseng and that consuming it would provide the energy associated with ginseng consumption. At the time of each purchase, Ms. Hunter did not know that the Product did not contain an amount of ginseng capable of providing any energy, if it contained any at all.

54.    As a result of Defendants' misrepresentations and omissions, the Product has no, or, at, a minimum, a much lower, value to Ms. Hunter. Had Ms. Hunter known that the product does not contain enough ginseng to provide energy (or that the product does not contain any ginseng at all), she would not have purchased it or, at a minimum, would have paid less for it. Accordingly, Ms. Hunter was injured by paying more money for the Product than she would have paid were it not for Defendants' misrepresentations.

55.    Plaintiffs continue to desire to purchase teas with quantities of ginseng sufficient to provide energy, including brands marketed and sold by Defendants. If Defendants' Product

were reformulated to include a level ginseng sufficient to provide energy, Plaintiffs would likely purchase Defendants' products again in the future. Plaintiffs regularly visit stores where Defendants' beverages are sold. Because Plaintiffs do not know the formula for Defendants' Product and cannot test whether or not the beverages are made using ginseng before purchasing, Plaintiffs will be unable to rely on Defendants' labels when shopping for beverages in the future absent an injunction that prohibits Defendants from labeling their beverages with the phrase "Ginseng for energy" unless the Product is actually made using a level of ginseng sufficient to produce an effect. Further, because green tea contains caffeine, it would be particularly difficult for Plaintiffs to determine, after consuming a future formula of the beverage, whether any resulting feeling of energy is attributable solely to caffeine or to instead to ginseng that may be in the formula. Likewise, because of changes in the market, Plaintiffs do not know at any given time, which brands are owned by Defendants and whether their representations about ginseng are truthful. Thus, Plaintiffs are likely to be repeatedly presented with false or misleading information when shopping for green tea and other soft drinks, making it difficult to make informed purchasing decisions. Should Defendants begin to market and sell a new brand of soft drink, Plaintiffs could be at risk for buying another one of Defendants' products in reliance on the same or similar misrepresentation.

## CLASS ALLEGATIONS

56.     Plaintiffs bring this action against Defendants, on behalf of themselves and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

> All persons who, between April 1, 2015 and the present, purchased the gallon jug or 23-ounce can of Arizona Green Tea with Ginseng and Honey in California (the "Class").

57.     Plaintiffs and members of the proposed class have been economically damaged by their purchase of the Product because the advertising for the Product was and is untrue and/or

misleading under California law; therefore, the Product is worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

58.     As a direct and proximate result of Defendants' unfair and wrongful conduct, as set forth herein, Plaintiffs and the class members: (1) were misled into purchasing the Product; (2) received a product that failed to meet their reasonable expectations and Defendants' promises; (3) paid a premium sum of money for a product that was not as represented and, thus, were deprived of the benefit of the bargain because the purchased product had less value than what was represented by Defendants; and (4) ingested a substance that was other than what was represented by Defendants and that Plaintiffs and class members did not expect.

59.     This action is properly brought and may be maintained as a class action because it satisfies all of the prerequisites of Rule 23.

60.     Numerosity: Plaintiffs do not know the exact size of the class, but it far exceeds 1000 persons.

61.     Typicality: Plaintiffs are typical of the class because they were subject to the fraudulent scheme of Defendants as every other class member. They purchased the Product based on Defendants' false representation that it contains "Ginseng for energy." Like all other class members, they paid a premium as a result of that misrepresentation and suffered economic injury as a result. Thus, Plaintiffs and the class members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law. The injuries and damages of each class member were caused directly by Defendants' wrongful conduct in violation of law as alleged.

62.     Adequacy:  Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs have no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the class. By prevailing on their claims, Plaintiffs will establish Defendants'

liability to all class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

63.     <u>Commonality and Predominance:</u> This action involves common questions the common answers of which will drive the resolution of this case for all class members because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Product contains ginseng. The Product contained the representation "Ginseng for energy" throughout the class period. The Product's formula likewise remained unchanged. Thus, all of the central issues in this case will be resolved via common proof for all class members, establishing that common issues predominate over any individual issues. The questions of law and fact common to the Class are:

a)     whether the Product contains ginseng and, if so in what quantity;

b)     whether Defendants unfairly, unlawfully and/or deceptively misrepresented that the Product contains sufficient "Ginseng for energy";

c)     whether the use of the phrase "Ginseng for energy" on the display panel of the Product violated Federal and/or California state law;

d)     whether the advertising of the product as having "Ginseng for energy" causes the Product to command a premium in the market as compared with similar products that do not make such a claim;

e)     whether Defendants' advertising and marketing regarding the Product sold to the class members was likely to deceive the class members and/or was unfair;

f)     whether the "Ginseng for energy" claim on Product packaging and advertising is material to a reasonable consumer's decision to purchase the Product;

g)     whether Defendants engaged in the alleged conduct knowingly, recklessly,

or negligently;

h)    the amount of profits and revenues earned by Defendants as a result of their conduct;

i)    whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

j)    whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

64.    <u>Superiority</u>: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

65.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## PLAINTIFFS' FIRST CAUSE OF ACTION

### (Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)

66.    Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

67.    Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

68.    Plaintiffs and class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

69.    The Products that Plaintiffs (and other similarly situated class members) purchased from Defendants were "goods" within the meaning of California Civil Code § 1761(a).

70.    Defendants' acts and practices, set forth in this Class Action Complain, led Plaintiffs and similarly situated consumers to falsely believe that the Product contained sufficient ginseng to provide energy to those who drink it. In truth, the Product does not contain any detectible amounts of ginseng (if indeed they contain any ginseng at all), so Defendants' claim that consumers can obtain energy from ginseng in the Product is false.

71.    By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that the goods they sell are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendants disparaged and continue to disparage the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code §1770(a)(8), Defendants falsely or deceptively market and advertise that, unlike other green teas, their Product contains sufficient ginseng to provide energy to those who consume it. Finally, in violation of California Civil Code §1770(a)(9), Defendants advertise and continue to advertise goods or services with intent not to sell them as advertised.

72.    Plaintiffs request that this Court enjoin Defendants from continuing to employ the

unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm.

73.     On October 22, 2018 and October 26, 2018, Plaintiffs provided Defendants with notice and demand that they correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. (*See* Exhibit D.) The October 22 notice was sent via certified mail, return receipt requested, to AriZona Beverage Company LLC and AriZona Beverages USA LLC, c/o National Registered Agents, Inc., 111 Eighth Avenue, New York, NY 10011. The October 26 notice was sent to (i) AriZona Beverages USA LLC, c/o Martin Cunningham, 60 Crossways Park Drive West, Woodbury, NY 11797; and (ii) Hornell Brewing Co., Inc., c/o National Registered Agents, Inc., 111 Eighth Avenue, New York, NY 1001. (*See id.*)[8] Despite receiving the aforementioned notices and demands, Defendants did not respond in any way. Defendants also failed to take any action in response to the notice and demand, as they did not identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

74.     Plaintiffs also requests that this Court award their costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## **PLAINTIFFS' SECOND CAUSE OF ACTION**

### **(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**

75.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

76.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive

---

[8] Hornell is the parent corporation of the AriZona limited liability companies.

and/or misleading statements in connection with the advertising and marketing of the Product.

77.     Defendants made representations and statements (by omission and commission) that led reasonable consumers to believe that the Product that they were purchasing contained sufficient ginseng to provide energy to those who drink it.

78.     In truth, the Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all), so Defendants' claim that consumers can obtain energy from ginseng in the Product is false.

79.     Plaintiffs and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth in Section A of the Substantive Allegations above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing the Product or paying less for it.

80.     Defendants' acts and omissions are likely to deceive the general public.

81.     Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants engaged in false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

82.     The aforementioned practices, which Defendants used, and continue to use, to their significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendants' competitors as well as injury to the general public.

83.     As a direct and proximate result of such actions, Plaintiffs and the other class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

84.     Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by

Defendants from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

85.    Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

86.    Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they are not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## **PLAINTIFFS' THIRD CAUSE OF ACTION**

**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**

87.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

88.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

89.    In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as

described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110740, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to 21 C.F.R. 101.3, 101.4, 101.13, 101.14, and 101.22, which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

90.    In particular, Defendants have engaged, and continue to engage, in unfair and fraudulent practices by misrepresenting that the Product contains "Ginseng for energy."

91.    In truth, the Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all), so Defendants' claim that consumers can obtain energy from ginseng in the Product is false.

92.    Plaintiffs and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing the product or, at a minimum, paying less for it.

93.    Defendants' acts and omissions are likely to deceive the general public.

94.    Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

95.    The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

96.    As a direct and proximate result of such actions, Plaintiffs and the other class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class members lost the amount of money they paid for the Product.

97.    As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

98.    Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the deceptive and/or unlawful trade practices complained of herein, plus interest thereon.

99.    Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

100.    Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they are not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### PLAINTIFF'S FOURTH CAUSE OF ACTION

### (Common Law Fraud, Deceit and/or Misrepresentation)

101.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

102.    Throughout the last four years, Defendants fraudulently and deceptively informed Plaintiffs and the proposed class that the Product contains sufficient ginseng to provide energy to those who drink it.

103.    Defendants failed to inform Plaintiffs and class members that the Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all), so Defendants' claim that consumers can obtain energy from ginseng in the Product is false.

104.    These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendants, not reasonably known or knowable to Plaintiffs or class members, and material at the time they were made. Defendants knew the composition of the Product and knew that the soft drinks contained no detectable amounts of ginseng or ginsenosides. Defendants intended to deceive consumers through its product label into believing that the Product contained "Ginseng for energy" when they knew it did not contain sufficient ginseng to impart any energy, as the misrepresentation was made prominently on the Product itself and reinforced through Defendants' advertising.

105.    Defendants' misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs and class members as to whether to purchase the Product. Defendants breached their duty to Plaintiffs and to the proposed class by misleading them. Defendants also gained financially from, and as a result of, their breach.

106.    Plaintiffs and those similarly situated relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by not purchasing the Product or, at a minimum, paying less for it.

107.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the Product.

108.    Plaintiffs and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants.

109.    As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Product.

110.    Defendants' conduct as described herein was wilful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

## PLAINTIFF'S FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation)

111.    Plaintiffs reallege and incorporate the above paragraphs of this Class Action Complaint as if fully set forth herein.

112.    Defendants negligently and falsely represented to Plaintiffs and those similarly situated that the Product contains "Ginseng for energy" which reasonably led consumers to believe that they the Product contained sufficient ginseng to provide energy to those who drink it.

113.    Defendants expected, knew or should have known, at all relevant times, that reasonable consumers would rely on the statement "Ginseng for energy" and on the absence of adequate disclosures to the contrary and that the information provided to and withheld from Plaintiffs and class members would guide or influence them in their purchasing decisions and would result in an inflated price for the Product.

114.    In truth, the Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all), so Defendants' claim that consumers can obtain energy from ginseng in the Product is false.

115.    Whether or not the Product contains ginseng in sufficient quantities to provide the energy associated with ginseng consumption was material to the decision of Plaintiffs and those similarly situated to purchase the Product. Had Plaintiffs and those similarly situated known that the Product does not contain ginseng sufficient quantities of ginseng to provide energy, they

would have acted differently by, without limitation, not purchasing (or paying less for) the Product.

116.    Plaintiffs and those similarly situated were unaware of the falsity of Defendants' representations, and justifiably relied on them in purchasing the Product.

117.    Due to their justifiable reliance on Defendants' misrepresentations, Plaintiffs and those similarly situated suffered pecuniary loss.

## PLAINTIFF'S SIXTH CAUSE OF ACTION

### (Unjust Enrichment)

118.    Plaintiffs reallege and incorporate the above paragraphs of this Class Action Complaint as if fully set forth herein.

119.    As a result of Defendants' unlawful and deceptive actions with respect to the "Ginseng for energy" representation described above, Defendants were enriched at the expense of Plaintiffs and those similarly situated through their payment of monies to obtain the Product.

120.    The Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all).

121.    Under the circumstances, it would be contrary to equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiffs and those similarly situated.

122.    By reason of the foregoing, Plaintiffs and those similarly situated were damaged in the amount they paid to obtain the Product.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully requests that the Court enter judgment against Defendants as follows:

A.    Certification of the proposed Class, including appointment of Plaintiffs' counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this

Complaint;

C.  An award of compensatory damages in an amount to be determined at trial;

D.  An award of punitive damages in an amount to be determined at trial;

E.  An award of statutory damages in an amount to be determined at trial;

F.  An award of restitution in an amount to be determined at trial;

G.  An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

H.  For reasonable attorneys' fees and the costs of suit incurred;

I.  For such further relief as this Court may deem just and proper;

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury as to all issues.


Dated:  April 2, 2019                         **GUTRIDE SAFIER LLP**

                                              /s/ Todd Kennedy/_____
                                              Todd Kennedy (California Bar No. 250267)